UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES SCOTT BASKIN,

    Petitioner,

v.　　　　　　　　　　　　　　　　　　　　　　　Case No. 2:07-cv-172
　　　　　　　　　　　　　　　　　　　　　　　　HON. R. ALLAN EDGAR
LINDA M. METRISH,

    Respondent.
_____/

# REPORT AND RECOMMENDATION

Petitioner James Scott Baskin filed this petition for writ of habeas corpus challenging his manslaughter conviction and sentence as a second habitual offender. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied. Petitioner claims:

    I.    There was insufficient evidence to sustain the verdict of voluntary manslaughter denying defendant his Fourteenth Amendment right to due process.

    II.    Trial court erred by admitting evidence from two prior misdemeanors a violation of defendant's due process.

    III.    Trial court violated defendant right to a fair trial guaranteed under the Fifth, Sixth and Fourteenth Amendment.

    IV.    Appeal court violated defendant right to due process of law and his right to a fair trial guaranteed under the Fifth, Sixth and Fourteenth Amendment.

> V. Reversible error was committed when the Court of Appeals did not remand on the jury not being instructed on involuntary manslaughter.
>
> VI. Appeal court erred when affirming defendant resentencing issue.
>
> VII. Defendant argues that the cumulative effect deprived him of a trial.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that there existed insufficient evidence to convict him of manslaughter. A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that petitioner committed the crime.

The Michigan Court of Appeals rejected petitioner's claim explaining:

The decedent, Curtis Lindsey, was loitering at a Shell gas station in downtown Grand Rapids with his friend, Michael Kingsley, and other persons, on the night of June 20, 2004. Defendant, who was also present, became involved in an altercation with Lindsey and his companions, which culminated in defendant producing a knife and stabbing Lindsey in the chest. Lindsey was taken to the hospital, where he was pronounced dead.

Defendant was arrested near the gas station. He gave the police various accounts of what happened, but eventually told them that he drew a knife in self-defense when Kingsley and another person approached him in a threatening manner. Defendant claimed that he held out the knife to ward them off while he tried to turn sideways to escape. Lindsey then came toward him and was stabbed by accident. Defendant told the officers that he threw the knife off a freeway ramp, but the officers never found it.

Kingsley acknowledged that he did not actually see defendant stab Lindsey. He testified that he saw Lindsey fall, and then defendant ran away.

Dr. Mark Figurski, who attended to Lindsey when he was brought to the hospital, testified that Lindsey was stabbed once with a great deal of force. The knife penetrated the heart and also injured the sternum (breast bone). Dr. David Start, the forensic pathologist who performed Lindsey's autopsy, testified that Lindsey's cause of death was a stab wound to the chest. Dr. Start found that the knife went through the "xiphoid process," or the bony part of the sternum, and penetrated Lindsey's pericardium and heart. According to Dr. Start, "it would take a significant amount of force" for a knife to go through the sternum. He considered it "very unlikely" that Lindsey walked

into the knife, because the knife would have stopped at the bone if he had. On cross-examination, Dr. Start acknowledged that a person might receive this type of wound if he ran into the knife, but only if the person holding the knife offered some resistance, or if he was swinging the knife toward the victim.

Defendant testified that an altercation began at the gas station when Kinglsey, Lindsey, and another man came uncomfortably close to him, and Kingsley made a threatening remark. Defendant took a knife from his pocket to ward them off. He held the knife toward them while he moved from left to right to get away from them. He stated that Lindsey was not in his line of sight as he turned with the knife and unintentionally stabbed him. Defendant stated that he believed the men were assaulting him, and he was only trying to get away from them. He described Lindsey's stabbing as a "fluke." He reiterated that he did not know that Lindsey was coming toward his knife, and that he intended only to scare off his attackers with the knife. Defendant testified that he originally lied to the police because he was ashamed to admit that he had been frightened of his assailants.

The jury acquitted defendant of an original charge of second-degree murder, but found him guilty of voluntary manslaughter. Although defendant had asked the trial court to instruct the jury on involuntary manslaughter, the trial court denied that request, stating that defendant's claim of an accidental stabbing did not comport with the definition of involuntary manslaughter.

Defendant argues that the evidence was insufficient to support his voluntary manslaughter conviction. When a defendant challenges the sufficiency of the evidence in a criminal case, we consider whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror in finding guilt beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000); *People v Sexton*, 250 Mich App 211, 222; 646 NW2d 875 (2002). Circumstantial evidence and the reasonable inferences that arise from it can constitute sufficient proof of the elements of a crime. *People v Williams*, 268 Mich App 416, 421; 707 NW2d 624 (2005).

Voluntary manslaughter is an intentional killing committed in the heat of passion, caused by adequate provocation, without a lapse of time during which a reasonable person could control his emotions. *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003). Provocation is not an element of manslaughter, but the circumstance that negates the presence of malice. *Id*. at 536.

> Defendant argues that the evidence was insufficient to permit an inference that he intentionally stabbed Lindsey, because Kingsley did not actually see the stabbing, and the physical evidence did not negate his theory of an unintentional or accidental stabbing. We disagree. The jurors could infer from Kingsley's testimony and the physical evidence that the stabbing was intentional. Dr. Start did not offer any explanations for the wound that were consistent with defendant's accidental stabbing theory. Dr. Start testified that a knife could not penetrate the xiphoid process unless the person wielding the knife used a substantial amount of force against the victim, such as by purposefully stabbing him, deliberately offering resistance, or by swinging the knife toward him. Each of these scenarios supports an inference that defendant acted intentionally.
>
> Viewing the evidence in a light most favorable to the prosecution, the jurors could reasonably infer that defendant deliberately stabbed Lindsey during a heated confrontation with him and two other individuals. Therefore, the evidence was sufficient to support defendant's manslaughter conviction.

It is clear that sufficient evidence existed to convict petitioner of voluntary manslaughter. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that error occurred when the court admitted prior bad acts evidence. Petitioner contends that the trial court abused its discretion when it admitted evidence where the probative value was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. Petitioner has not shown that his due process rights were violated by the admission of evidence regarding his previous confrontation with Forrest Anderson. The Michigan Court of Appeals rejected this claim stating:

> Before trial, the prosecutor filed a notice pursuant to MRE 404(b)(2) of his intent to introduce evidence that defendant threatened Forrest Andersen with a knife a few days before Lindsey was stabbed. The prosecutor argued that the evidence was admissible to prove "motive, intent, plan, absence of mistake."
>
> Andersen testified that he and defendant were residents at the same halfway house. Andersen related an incident on June 17, 2004, in which he and defendant had an argument and started to push each

> other. Andersen pushed defendant against a window, causing defendant to cut himself on the broken glass. Andersen left the area, but defendant approached him with a knife. Andersen pushed him away and left.
>
> We conclude that any error in the admission of this testimony was harmless. The testimony added nothing prejudicial to the already admitted fact that defendant had a knife during the incident at issue, and that he pulled it out and brandished it because he was prepared to use it to protect himself.

In the opinion of the undersigned, petitioner has not shown that the decision of the Michigan appellate court was unreasonable.

Petitioner claims that the trial court erred by allowing the prosecutor to cross examine petitioner about two prior misdemeanors for aggravated assault and possession of a switchblade. Petitioner also claims that the court erred by not allowing the admission of evidence that the victim had a previous conviction for carrying a concealed weapon. The Michigan Court of Appeals explained:

> Defendant next argues that the trial court erred by allowing the prosecutor to cross-examine him about an armed robbery offense committed in 2001, when he allegedly robbed Manuel Garcia and used a box cutter as a weapon. Defendant denied robbing Garcia, and maintained that he was just whittling with a knife.
>
> Defendant argues that this line of questioning was improper impeachment under MRE 609 (impeachment with evidence of a prior conviction for an offense involving an element of theft or dishonesty), and also inadmissible under MRE 404(b). The record does not indicate that the prosecutor offered the evidence under either of these court rules, or that the trial court relied on either rule as a basis for allowing the testimony. Rather, the prosecutor cross-examined defendant, as permitted by MRE 405(a), in response to defendant's testimony, under MRE 404(a)(1), portraying himself as a frequent victim of crime.
>
> On direct examination, defendant testified that he became frightened when Lindsey's companions approached him at the gas station, and that he brandished the knife defensively, not aggressively. Defendant

attempted to bolster this testimony with character evidence, under MRE 404(a)(1), portraying himself as a fearful person who was more likely to be the victim of crime than a perpetrator. Defendant testified about his prior experiences as a crime victim. He stated that he was once shot in the leg and that the bullet was still in his leg. He also stated that his ex-girlfriend once cut him on the face when she was intoxicated, and he still had a scar. Additionally, when he was in the Navy, he was attacked by persons he did not know and was cut on the back of his neck with a knife. The trial court permitted the prosecutor to cross-examine defendant about the 2001 offense involving Garcia to rebut defendant's testimony and implied argument that he had been a victim of assaultive behavior three times, and was thus fearful of again being a victim, making it more likely that he acted defensively with respect to the instant offense.

Because defendant placed his character in issue, the prosecutor was permitted, under MRE 405(a), to inquire into relevant specific instances of conduct to rebut that evidence. *People v Lukity*, 460 Mich 484, 499; 596 NW2d 607 (1999). Thus, the trial court did not abuse its discretion in permitting the prosecutor to cross-examine defendant regarding the incident with Garcia, and the cross-examination did not implicate either MRE 404(b) or MRE 609. *Id*.

Defendant also argues that the trial court erred by excluding evidence of Lindsey's previous conviction for carrying a concealed weapon. We disagree.

Defendant sought to introduce evidence that Lindsey was previously convicted of carrying a nine-inch kitchen knife. Lindsey was found in possession of the knife when the police found him intoxicated in the middle of the street. He told the police officer that he carried the knife to defend himself, because he had been assaulted on three prior occasions. The trial court excluded the evidence, reasoning that the conviction did not involve an assaultive offense and, therefore, its prejudicial effect outweighed any probative value.

Defendant correctly asserts that evidence of a homicide victim's violent trait of character for aggression is admissible where a defendant claims self-defense, or where he claims that the victim was the aggressor. MRE 404(a)(2). In *People v Harris*, 458 Mich 310, 315-316; 583 NW2d 680 (1998), our Supreme Court discussed the application of this rule and MRE 405 (methods of proving character). The defendant in that case sought to introduce evidence of the victim's reputation for violence and specific instances of violent conduct. *Id*. at 312-313, 320. The Court explicated the differences

between cases where the defendant claims self-defense and cases where the defendant claims that the victim was the aggressor. *Id*. at 315-318. In this case, however, evidence of Lindsey's prior conviction was not probative of the questions of self-defense or the victim's aggression. Lindsey was convicted only of possessing a weapon, in circumstances that did not suggest any propensity for aggressive behavior or a history of violence. Accordingly, the trial court did not abuse its discretion in excluding the evidence. *Manser, supra* at 31.

The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that the court erred by failing to instruct the jury on involuntary manslaughter. The Michigan Court of Appeals concluded that a rational view of the evidence could have supported an involuntary manslaughter conviction, but reversal was unwarranted because petitioner was convicted of voluntary manslaughter which falls under the same statute as involuntary manslaughter. In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that a death sentence was unconstitutional where the jury was never instructed on a lesser included offense noncapital offense where the evidence supported such a verdict. The Court concluded:

> While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense – but leaves some doubt with respect to an element that would justify conviction of a capital offense – the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

> Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated there is a significant constitutional difference between the death penalty and lesser punishments.

*Id.* at 637. The Supreme Court left open the question whether the Due Process Clause is violated when a lesser included offense is omitted from jury consideration in a noncapital case. *Id.* at 638 n. 14. Accordingly, petitioner cannot show that the Michigan Court of Appeals' decision was an unreasonable interpretation of the law as established by the Supreme Court.

Petitioner claims that the trial court improperly scored his offense variables under the sentencing guidelines and in violation of *Blakely v. Washington,* 542 U.S. 296 (2004), arguing that any increase in a sentence imposed based on facts not submitted to a jury is unconstitutional. However, the issue presented in *Blakely* was the constitutionality of a statute which set out a guideline range of sentences, but permitted a court to impose a sentence in excess of those guidelines based on facts not submitted to a jury. In Michigan, a court does not have the authority to exceed the statutorily authorized sentence, and the sentences imposed here by the trial court do not exceed the statutorily authorized ranges. Therefore, *Blakely* is not applicable.

Similarly, petitioner claims that the judge inaccurately considered the sentencing guidelines. Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus proceedings. *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970). To the extent that petitioner challenges the correctness of his sentence on the basis of state law, petitioner is not entitled to habeas review unless there has been a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990).

Furthermore, MCL § 750.321 provides for imprisonment of not more than fifteen years. Petitioner was sentenced as a second habitual offender under MCL § 769.10 which provides for an enhanced punishment of one and one half the maximum. Therefore, petitioner has not set forth a federal question because his sentence was imposed within the state statutory limit. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988).

> [A] state trial court's sentencing decision and claims arising out of the decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law. *E.G.*, *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648-49, 91 L.Ed. 8181 (1947); *United States v. Jackson*, 696 F.2d 320, 321 (5th Cir. 1983); *Willeford v. Estelle*, 538 F.2d 1194, 1196-97 (5th Cir. 1976). If the sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentence's discretion and thereby deprived petitioner of his liberty.

*Id.* at 923-24. Petitioner's sentence does not exceed the statutory limit nor has petitioner shown that the sentence amounted to an arbitrary and capricious abuse of discretion. Moreover, petitioner has not shown that the Michigan Court of Appeals' decision rejecting this issue was unreasonable. Finally, for the reasons stated, petitioner's claim of cumulative error is not actionable in this proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate

of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley  
        TIMOTHY P. GREELEY  
        UNITED STATES MAGISTRATE JUDGE

Dated: January 29, 2010